**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION (DETROIT)**

_____

IN RE:

|  |  |
|---|---|
| **GENERAL PRODUCTS CORPORATION,** | **Case No.: 16-49267** |
| **Debtor.** | **(Chapter 11)** |
|  | **Hon.** |

_____ /

**DEBTOR'S EMERGENCY FIRST DAY MOTION FOR INTERIM ORDER**
**AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL**
**PENDING A FINAL HEARING, (B) INCUR POST-PETITION DEBT PENDING**
**A FINAL HEARING, AND (C) GRANT ADEQUATE PROTECTION**
**AND PROVIDE SECURITY AND OTHER RELIEF TO MB FINANCIAL BANK, N.A.**

Debtor, by its proposed counsel, Miller Johnson, as its Emergency First Day Motion for Interim Order Authorizing Debtor to: (A) Use Cash Collateral Pending a Final Hearing, (B) Incur Post-Petition Debt Pending a Final Hearing, and (C) Grant Adequate Protection and Provide Security and Other Relief to MB Financial Bank, N.A. (the "Motion"), seeks entry of the proposed order attached hereto as **Exhibit A** (the "Interim Order") on an interim basis, authorizing Debtor to use cash collateral and incur post-petition debt pending a final hearing and granting adequate protection to MB Financial Bank, N.A. ("MB"), Debtor's pre- and post-petition lender. In support of the Motion, Debtor respectfully states as follows:

**JURISDICTION**

1.      On this date (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code as amended (the "Bankruptcy Code"). The Debtor continues to manage and operate its business as Debtor-In-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.      No trustee or examiner has been appointed in the Debtor's Chapter 11 case and no committees have been appointed or designated.

3.     This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper for this court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.     The statutory predicate for relief requested herein is §§ 361, 363 and 364 of the Bankruptcy Code.

## BACKGROUND

### Corporate Structure

5.     General Products Corporation, (a Delaware corporation) ("GPC") is headquartered in Livonia, Michigan.

6.     General Products Mexico, LLC (a Michigan limited liability company) ("GPM"), which is also headquartered in Livonia, Michigan, does not conduct any business operations.  Its sole assets are a 2% ownership interest in GP Innovative Machining & Assembly de Mexico, S. de R.L. de C.V. ("Innovative") and SLP Resource Solutions, S. de R.L. de C.V. ("SLP") (together, the "Mexican Entities").

7.     GPC is the sole member of GPM and owns 98% of each of the Mexican Entities.

8.     GPM has also filed a Chapter 11 bankruptcy petition with this Court and a Motion to administratively consolidate these cases has been filed.  (GPC and GPM are jointly referred to herein as "Debtors".)

2

9. Set forth below is a flow chart summarizing GPC's corporate structure.

General Products Corporation
Structure of Corporate Entities



## Business Operations

10.     GPC is a full service supplier of highly engineered, complex and precision machine components and assemblies to the American automotive and heavy-duty truck markets. The company has approximately 175 employees located in its United States facilities. Additionally, Innovative leases approximately 38 employees from SLP and two unrelated Mexican companies for its manufacturing facility. SLP functions solely as the employer of 14 employees who are subcontracted to Innovative. Neither General Products Mexico, LLC or SLP have any manufacturing facilities. In 2015, GPC had gross sales of approximately $43.4 million.

11.     The Debtors' headquarters and primary management offices are located at 14137 Farmington Road, Livonia, Michigan 48154. GPC also owns and operates manufacturing facilities at 1411 Wohlert Street, Angola, Indiana 46703 and 188 Earl Davis Drive, Russellville, Kentucky 42276. Innovative leases a manufacturing facility at Avenida EJE Dos #206 Lote 251 M1 Parque Industrial Logostik Villa Reyes, S.L.P., Mexico C.P. 79526.

12.     Innovative generates revenues for GPC. These revenues are included in GPC's gross revenue figures.

## Business History

13.     GPC was founded in 1922 in Jackson, Michigan and evolved its machining capabilities from low-margin, commodity type products to more precision, close-tolerance components used in chassis and engine systems. Prior to 2000, the company grew rapidly, establishing a relationship with Ford Motor Company and began to supply engine components to the heavy-duty truck industry. In 1986, GPC opened its Angola, Indiana facility. In 2004, GPC acquired its Russellville, Kentucky facility.

4

**Events Leading to Filing**

14. In 2009, GPC started experiencing a decline in revenue due to a significant decline in auto and heavy truck sales. GPC emerged from the 2008-2010 recession with a working capital deficit and a high debt to equity ratio.

15. As GPC began to recover, one of GPC's largest customer programs was not renewed as a result of reengineering of materials used in the product.

16. During 2011 and 2012, GPC experienced a number of additional operational challenges related to tooling and commissioning new business. Despite continued capital investment, revenues failed to grow and the business never returned to profitability.

17. In 2012 and 2013, GPC implemented significant cost reductions and operational improvements under Andrew Masullo as its new President and Chief Executive Officer.

18. In spite of these changes, due to a declining demand for product from existing customers and as a result of the increased capital requirements needed to replace and grow its business, GPC has been faced with insufficient cash flow to continue paying secured debt and vendor obligations on a timely bases. As a result, it has been forced to seek a buyer or liquidate.

**Current Equity and Debt Structure**

19. GPC's equity is held primarily by two entities. Norwest Mezzanine Partners ("NMP") owns just under 60% of GPC's equity and Protostar Equity Partners, LLC owns approximately 31%. Below is a complete list of GPC's shareholders with their ownership percentages:

| Shareholder | Percentage |
|---|---|
| William D. Best | 0.13 |
| Guy M. Cassidy | 0.72 |

| Shareholder | Percentage |
|---|---|
| Larry D. Clanton | 0.17 |
| Kevin Haines | 0.64 |
| Joseph Haviv | 1.82 |
| MidMark Capital II, L.P. | 5.69 |
| Norwest Mezzanine Partners (NMP) | 59.70 |
| Protostar Equity Partners, LP | 31.13 |

20.     GPC estimates that, in the aggregate, it has approximately 1,500 creditors, including active and retired employees.  GPC has senior secured debt in the amount of approximately $12.5 million and unsecured trade debt of approximately $4.8 million.   In addition, GPC is obligated to NMP in the amount of $14.8 million on an unsecured basis. Further, GPC estimates that as of December 31, 2015 its union pension plan is underfunded in the amount of $3,970,421 and that it is obligated to fund health care for its retired non-union employees.  Based on actuarial schedules, as of December 31, 2015, the healthcare obligation is estimated to be $1,008,446.

### Secured Debt

21.     GPC's secured debt is comprised of a revolving line of credit and three (3) term loans as evidenced by the loan and security documents between General Products and MB Financial Bank, f/k/a Cole Taylor Bank ("MB Bank").

22.     As of May 31, 2016, the outstanding balance owed to MB Bank by GPC under the various loans were as follows:

       a.     $4,900,000.00 under the revolving credit facility; and

       b.     $7,559,000.00 under the term loans.

23.     GPC's obligations to MB Bank are secured by a properly perfected first lien position on substantially all of GPC's personal property, as well as first priority mortgages on GPC's Angola, Indiana and Russellville, Kentucky facilities.

24.     NMP, GPC's largest shareholder, has also deposited $2.75 million with MB Bank as additional security for GPC's obligations to MB Bank.

25.     Further, as of May 31, 2016, GPC's five (5) primary customers have funded a total of $1,365,552 in last-out participations in the MB Bank debt.

26.     Finally, General Products has a total of $2,800,000 in purchase money secured debt owing to 14 separate lenders.

## Stalking Horse Sale Agreement

27.     As a result of the factors described above, in late 2015, GPC and its management team began evaluating a number of options to respond to their operational and liquidity issues.  To this end, GPC engaged an outside professional to evaluate its business and to propose potential strategies, including but not limited to, the raising of additional capital, a sale of some or all assets, or a restructuring transaction.

28.     The professional engaged to serve as a financial advisor to GPC was Ron Miller of Blue Water Partners, LLC ("Blue Water").  Among other activities performed in connection with its engagement, Blue Water evaluated GPC's business and financial performance to determine if there were alternative business models that could lead to improved financial strength.  Blue Water's ultimate conclusion was that there was not a better model.  The primary challenge was to reduce the size of the debt load burdening the company.

29.     Notwithstanding its financial challenges, GPC strongly believes that the specialized products it provides to its customers and its niche in the auto and heavy duty truck industry means it can be a viable player in the industry going forward.  In consultation with its advisors, GPC decided upon a Chapter 11 bankruptcy and sales process to effect a balance sheet restructuring that would provide the business with the best chance for greater success and prosperity.

30.     Blue Water began a robust marketing effort on December 1, 2015.

31.     Pursuant to Blue Water's efforts, more than 115 potential buyers were contacted. 53 of the potential buyers obtained access to Debtor's data after signing non-disclosure agreements. Question and answer sessions were held with 15 of these parties. 5 of the parties ultimately signed LOIs and from these a single buyer was chosen.

32.     The buyer chosen has submitted an offer for a significant portion of Debtor's assets on a going concern basis through a sale conducted under Section 363 of the Bankruptcy Code.

33.     The offer is memorialized by an Asset Purchase Agreement with Industrial Opportunity Partners ("IOP"), for the sale and purchase of specified GPC assets. This would allow IOP to continue operating and serving GPC's customers in the automotive and heavy-duty truck industry. As part of the purchase, IOP will assume a significant portion of GPC's supplier obligations. IOP is not an affiliate of GPC and neither it nor any of its owners are related to or hold claims against GPC.

34.     Consequently, after reviewing the economic and financial landscape, GPC decided it was in its best interest, the interest of its employees and its creditors to seek the protection of Chapter 11 in order to provide an expeditious restructuring of its debt through one or more Section 363 sales of its business assets.

35.     GPC believes it is critical to examine every possible option to maximize the value of its business. As a result and in order to insure a marketing process that generates the maximum value for its assets, Blue Water will continue to assist in the marketing and sale of the company after the bankruptcy filing.

36.    Accordingly, on the Petition Date, the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

## RELIEF REQUESTED

37.    By this Motion, Debtors are requesting entry of the Interim Order authorizing Debtors to (A) Use Cash Collateral Pending a Final Hearing, (B) Incur Post-Petition Debt Pending a Final Hearing, and (C) Grant Adequate Protection and Provide Security and Other Relief to MB Financial Bank, N.A., pursuant to the Interim Budget, which is attached to the Interim Order as **Exhibit B** ("Interim Budget") until the conclusion of the final hearing on Debtors' Motion or the date on which the Interim Order becomes final.

38.    Pursuant to the terms of any proposed Final Order, the Debtors seek to use cash collateral and/or incur post-petition debt until its assets are sold or August 23, 2016, whichever occurs earlier, unless this deadline is extended by stipulation.

39.    The various provisions which grant adequate protection to MB are set forth in the cover sheet which accompanies this Motion, the budget and the post-petition Credit and Security Agreement between Debtors and MB.

40.    In compliance with Federal Rule of Bankruptcy Procedure 4001 and Local Bankruptcy Rule 4001-2(a), Debtors state as follows with regard to the terms of the post-petition loans:

a.    The interest rate for the post-petition loans is equal to the non-default rate charged for the pre-petition loans from MB (generally, prime plus 350 to 425 basis points). *See* Section 4 and Schedule 1.01-A of the Post-petition Credit & Security Agreement ("Credit Agreement").

b.    The post-petition loans with MB mature on the earlier of the sale of Debtors' assets or August 23, 2016.

c.   Events of Default are set forth in Section 13.01 of the Credit Agreement.

d.   Debtors propose to grant first priority liens on all of their assets to secure the pre- and post-petition loans, subject to certain Priority Permitted Liens.  *See* Section 5 of the Credit Agreement and Section 3(d) of proposed order.

e.   Based upon borrowing limits in the documents, Debtors estimate that the current post-petition credit availability is approximately $2.9 million.  *See* the definition of "borrowing base" in Section 1.01 of the Credit Agreement.

f.   The borrowing conditions are generally set forth in Section 2 of the Credit Agreement.

g.   Debtors are granting first priority liens in all of their property and superpriority administrative expense status to the postpetition loans pursuant to 11 U.S.C. § 364(c) because Debtors are unable to obtain credit on other terms.  This provision is to remain in effect even if Debtors' case is converted to another chapter or dismissed. *See* Section 3(d) of the proposed order.

h.   Prior to the final hearing, payment of MB's pre-petition debt is being made pursuant to the terms of the proposed order only with proceeds of MB's collateral.  Upon entry of the final order, all of MB's prepetition debt will be refinanced with the Postpetition facility.  *See* Section 8 of the Coversheet which accompanies this Motion ("Coversheet").

i.   MB's liens are being validated pursuant to the proposed order, subject to the challenge period set forth in Paragraph 8 of the proposed order.  *See* Section 4 of the Coversheet.

j.   Section 5(b) of the proposed order contains language waiving the automatic stay as to MB.

k.   Language concerning waiver of non-bankruptcy law perfection requirements concerning the post-petition liens is contained in Section 3(d) of the proposed order.

l.   Indemnification provisions are set out in Section 15 of the Credit Agreement.  *See*, also Section 12 of the proposed order.

m.   The waiver of surcharge rights under 11 U.S.C. § 506(c) are set forth in Section 7 of the proposed order, subject to entry of a final order.

41.     Debtors represent that the terms of the Interim Order have been negotiated at arm's length and in good faith between the Debtors and MB.

42.     The Interim Order and post-petition debt are conditioned upon and related to the Debtors entering into an accommodation and access agreements with their key customers, along with the participation agreement between MB and such customers.  The Debtors' post-petition operations and funding require that all of those financing related items be granted, approved or assumed concurrently to ensure Debtors' continued production and progress to the maximization of the value of their assets.

43.     The terms of the accommodation agreement, access agreement and participation agreement have been negotiated at arm's length and in good faith between the Debtors, MB and the key customers.

44.     MB consents to the interim use of cash collateral and has agreed to make the post-petition financing described in the Interim Order available pending a final hearing pursuant to the terms and conditions of the Interim Order and the Interim Budget.

45.     Debtors further request that given the circumstances, the relief requested by this Motion be considered on an expedited basis, with the other "First Day" pleadings filed with this Court.

## NOTICE OF THIS MOTION

46.     GPC has caused a copy of this Motion to be served on: (i) the Office of the United States Trustee for the Eastern District of Michigan; (ii) counsel to MB Financial Bank, N.A.; (iii) each of GPC's secured creditors and (iv) the twenty largest unsecured creditors of GPC as disclosed on GPC's schedule filed pursuant to B.R. 1007(d).  In light of the nature of the relief requested, GPC submits that no further notice is required.

## NO PRIOR REQUEST

47.     No prior motion for the relief requested in this Motion as been made to this or any other court.

WHEREFORE, Debtors respectfully request that this Court enter the Interim Order in the form attached as **Exhibit A** on an interim basis and grant such other and further relief as it may deem just, equitable and proper.

MILLER JOHNSON
Proposed Attorneys for Debtors

Dated: June 27, 2016             By  /s/ Rachel L. Hillegonds
                                      John T. Piggins (P34495)
                                      pigginsj@millerjohnson.com
                                      Robert D. Wolford (P62595)
                                      wolfordr@millerjohnson.com
                                      Rachel L. Hillegonds (P67684)
                                      hillegondsr@millerjohnson.com
                                      PO Box 306
                                      Grand Rapids, Michigan  49501-0306
                                      Telephone:  (616) 831-1700
                                      Facsimile: (616) 831-1701

16-49267-tjt   Doc 11   Filed 06/27/16   Entered 06/27/16 18:22:14   Page 12 of 12