# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION (DETROIT)

IN RE: **GENERAL PRODUCTS CORPORATION,**
*et al.,*[1]

                     **Debtors.**

Case No.: 16-49267
(Chapter 11)
Jointly Administered
Hon. Thomas J. Tucker

/

# SECOND AMENDED
## COMBINED JOINT PLAN OF LIQUIDATION AND
## DISCLOSURE STATEMENT

PREPARED BY:

MILLER JOHNSON

JOHN T. PIGGINS (P34495)
ROBERT D. WOLFORD (P62595)
RACHEL L. HILLEGONDS (P67684)
45 Ottawa Ave., S.W., Ste. 1100
Grand Rapids, MI 49501-0306
(616) 831-1700
pigginsj@millerjohnson.com
wolfordr@millerjohnson.com
hillegondsr@millerjohnson.com

*Attorneys for Debtors*

VARNUM LLP

BRENDAN G. BEST (P66370)
WILLIAM L. THOMPSON (P80123)
160 W. Fort St., 5th Floor
Detroit, MI 48226
(313) 481-7326
bgbest@varnumlaw.com

*Attorneys for the Official Committee of
Unsecured Creditors*

---

[1] The Debtor's case is jointly administered with the case of General Products Mexico LLC, Case No. 16-49269.

## PLAN OF REORGANIZATION

## INTRODUCTION

Debtors and the Official Committee of Unsecured Creditors hereby jointly propose in good faith the following liquidating Plan of Reorganization for the resolution of outstanding Creditor Claims and equity Interests (each as defined below).

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

1.1 SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION. For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meaning ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine.

1.2 DEFINITIONS.

1.2.1 *"Administrative Claim"* means a Claim for payment of an administrative expense of a kind specified in Section 503(b) or 507(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) or 507(b) of the Bankruptcy Code, including, but not limited to, (a) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries or commissions for services rendered after the Petition Date, (b) Professional Fees, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930 and (d) all Allowed Claims that are entitled to be treated as administrative claims pursuant to a Final Order under Section 546(c)(2) of the Bankruptcy Code.

1.2.2 *"Administrative Creditor"* means any Creditor holding an Allowed Administrative Claim.

1.2.3 *"Allowed"* means when used in reference to a Claim or Interest, within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.2.4 *"Allowed Claim"* or *"Allowed Interest"* means

    A. A Proof of Claim or Interest that was:

        1. Timely filed;

        2. Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or

2

3. Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to the Debtor and counsel for the Debtor; and

B. 1. The Claim is not a Contested Claim or a Contested Interest;

or

2. The Claim is Allowed (and only to the extent Allowed) by a Final Order of the Bankruptcy Court.

1.2.5 *"Approval Transaction"* shall have the meaning set forth in Section 4.7 of the Plan.

1.2.6 *"Avoidance Actions"* means all Claims and Causes of Action that belong to the Debtor-in-Possession or to the Estate under Chapter 5 of the Bankruptcy Code (including, but not limited to, actions under Section 547).

1.2.7 *"Ballot"* means the official bankruptcy form no. 14 adopted for this Case or a document prepared to substantially conform to same which was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.8 *"Bank"* means MB Financial Bank, N.A. (successor in interest to Cole Taylor Bank).

1.2.9 *"Bankruptcy Code"* or *"Code"* means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§101, *et seq.*), as in effect as of the Petition Date, or thereafter amended to the extent such amendments are applicable to this Chapter 11 Case.

1.2.10 *"Bankruptcy Court"* or *"Court"* means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, or such other court as may have jurisdiction over this Chapter 11 Case.

1.2.11 *"Bankruptcy Rules"* or *"Rules"* means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto, and the Federal Rules of Civil Procedure, as amended, and as made applicable to the Chapter 11 Case or proceedings therein. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and as applicable to the Chapter 11 Case and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.2.12 *"Bar Date(s)"* means November 2, 2016, or the 180th day after the Petition Date for governmental units, which are the dates designated by the Bankruptcy Court, at Docket Number 41, as the last date(s) for filing Proofs of Claim or Interest against the Debtor, or otherwise asserting any Claim against the Debtor including a claim under 11 U.S.C. § 503(b)(9), or, in the absence of such designation with respect to any action, as shall be applicable under the Bankruptcy Rules. Bar Dates for certain other Local Bankruptcy Administrative Claims are set

forth in Section 2.1.3 below. Bar Dates with respect to rejected executory contracts are set forth in Section 10.2 below.

1.2.13 *"Business Day"* means any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.2.14 *"Cash"* means legal tender of the United States or equivalence thereof.

1.2.15 *"Causes of Action"* means any and all actions (including Avoidance Actions), proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise. Causes of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity belonging to the Estate; (b) any claim pursuant to Sections 362, 502, and 510 of the Bankruptcy Code and any analogous provisions of applicable state law belonging to the Estate; (c) any claim, right or cause of action related to any and all Avoidance Actions (including, but not limited to, any fraudulent conveyance or fraudulent transfer claims the Debtor may have pursuant to Sections 544, 548 and 550 of the Bankruptcy Code or applicable non-bankruptcy law); (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses belonging to the Estate set forth in Section 558 of the Bankruptcy Code; and (f) any claims the Debtor may have against current or former officers, directors, or insiders of the Debtor, other than claims released hereby or in the Settlement Agreement.

1.2.16 *"Chapter 11 Case"* or *"Case"* means the chapter 11 cases of the Debtors pending in the Bankruptcy Court, styled *In re General Products Corporation*, Case No. 16-49267 and *In re General Products Mexico LLC,* Case No. 16-49269.

1.2.17 *"Claim"* means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.18 *"Class"* means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.19 *"Closing Date"* means the last date of closing of the sales of the real and personal property of the Debtor defined below as the Collateral.

1.2.20 *"Collateral"* means any property or interest in real or personal property of the Estate subject to an unavoidable Lien securing the payment or performance of a Secured Claim. The Collateral either has been or otherwise shall be liquidated in any combination that will yield the highest and best offer(s).

4

1.2.21 *"Committee"* means the official committee of unsecured creditors that has been appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Case.

1.2.22 *"Conditions Precedent"* means those conditions to the Effective Date of the Plan set forth in Section 5.1 of the Plan.

1.2.23 *"Confirmation Date"* means the date on which the Bankruptcy Court shall enter the Confirmation Order.

1.2.24 *"Confirmation Hearing"* means the hearing to consider the confirmation of the Plan under Section 1128 of the Bankruptcy Code.

1.2.25 *"Confirmation Order"* means the order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.2.26 *"Contested"* means when used in reference to a Claim or Interest in this Plan, any Claim or Interest as to which Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.2.27 *"Creditor"* means any Holder of a Claim against the Debtor.

1.2.28 *"Creditor Trust"* means the trust established by the Creditor Trust Agreement.

1.2.29 *"Creditor Trust Agreement"* means that Amended Creditor Trust Agreement to be executed on or before the Effective Date among the Debtor, the Committee, and the Creditor Trustee establishing the terms and conditions of the Creditor Trustee and the powers of the Creditor Trustee. Such agreement shall be in the form of **Exhibit A**.

1.2.30 *"Creditor Trust Assets"* shall mean all of the Debtors' tangible and intangible assets and the Estate assets which are not subject to a Lien or, if subject to a Lien, are not necessary to satisfy a Secured Claim, plus all proceeds, earnings, and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time, including, but not limited to: (i) all Cash held by the Debtor (or its counsel or other third parties on its behalf, including deposits); (ii) all furniture and equipment; (iii) inventory and any and all proceeds thereof; (iv) the Debtor's outstanding accounts receivable and the proceeds thereof; (v) all of the Debtor's right title and interest in and to all Causes of Action, including the proceeds thereof; (vi) all intangible assets, including trademarks, tradenames, copyrights, patents, and other intellectual property; (vii) all rights of the Debtor under the Plan, the Confirmation Order, the Settlement Agreement, and all other orders entered by the Bankruptcy Court in this Chapter 11 Case on or prior to the Effective Date; (viii) all books and records related to the Debtor or its Estate; and (ix) all payments owing to the Trust pursuant to the Settlement Agreement.

1.2.31 *"Creditor Trust Expenses"* means the reasonable expenses of administering the Creditor Trust, as provided for in the Creditor Trust Agreement.

1.2.32 *"Creditor Trustee"* shall mean such Entity, including any replacement thereof or successor thereto, designated by the Committee to serve as trustee for the Creditor Trust and to

5

oversee the liquidation of the Creditor Trust Assets for the benefit of Creditor Trust beneficiaries in accordance with the Plan and the Creditor Trust Agreement. The initial Creditor Trustee shall be named no later than ten (10) days prior to the Confirmation Hearing.

1.2.33 *"Cure"* means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to Section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease.

1.2.34 *"Debtor"* or *"Debtor-in-Possession"* means, as required by the context, the above-captioned debtors, General Products Corporation, a Delaware corporation and General Products Mexico, LLC, a Michigan limited liability company.

1.2.35 *"Disallowed Claim"* means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not included in the Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.36 *"Disputed"* means with respect to any Claim or any Claim on the claims register that is not yet Allowed.

1.2.37 *"Disputed Claim"* or *"Disputed Interest"* means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest, as the case may be.

1.2.38 *"Effective Date"* means the twentieth (20th) Business Day after the occurrence or waiver by the Debtor, the Bank and the Committee of all Conditions Precedent.

1.2.39 *"Entity"* shall have the meaning given to it under Section 101(15) of the Bankruptcy Code.

1.2.40 *"Estate"* means the Estates of the Debtors in these Chapter 11 Cases, or created pursuant to Section 541 of the Bankruptcy Code.

1.2.41 *"Exhibit"* means any document identified as an "exhibit" in this Plan, as modified, amended, or supplemented.

1.2.42 *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

1.2.43 *"Final DIP Order"* means that certain Final Order Authorizing Debtor to: (A) Use Cash Collateral; (B) Incur Postpetition Debt and (C) Grant Adequate Protection and Provide Security and Other Relief to MB Financial Bank, N.A. (Docket No. 138), as amended.

1.2.44 *"Final Order"* means an order of the Bankruptcy Court as to which (a) the time for appeal has expired and no appeal has been timely taken, (b) any timely appeal has been finally determined or dismissed and the time for any successive appeal has expired and no successive appeal has been timely taken, or (c) in the discretion of the Creditor Trust, an appeal has been timely taken but such order has not been stayed within ten (10) days after the filing of such appeal.

1.2.45 *"Group"* means one or more similarly situated Creditors who hold or may allege Claims against the Debtor whose Claims are not subject to classification pursuant to Section 1123(a)(1) of the Bankruptcy Code.

1.2.46 *"Holder"* means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.47 *"Impaired"* means, when used with reference to a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.2.48 *"Interest"* means any equity interests in the Debtor, of any kind or nature, including without limitation, any corporate share interests.

1.2.49 *"Lien"* means a charge against, or an interest in, property to secure payment of a debt or performance of an obligation.

1.2.50 *"MB Claim"* means the amount of the Aggregate Debt as that term is defined in the terms of the Final DIP Order.

1.2.51 *"Norwest"* means Norwest Mezzanine Partners III, LP who shall be deemed to hold an Allowed Claim in the amount of $13,827,516.61, subject to and entitled to payment in accordance with the provisions of this Plan and the Settlement Agreement.

1.2.52 *"Oversight Committee"* means a committee consisting of three (3) members, who shall be selected from the Committee, which will have the approval rights set forth in the Creditor Trust Agreement or the Plan.

1.2.53 *"Person"* shall have the meaning given to it under Section 101(41) of the Bankruptcy Code.

1.2.54 *"Petition Date"* means June 27, 2016, the date upon which the Debtors voluntarily filed for relief pursuant to chapter 11 of the Bankruptcy Code.

7

1.2.55 *"Plan"* means this liquidating Plan of Reorganization, as it may be altered, amended, supplemented or modified from time to time.

1.2.56 *"Priority Claim"* means a Claim under or entitled to priority under any of the following sections of the Bankruptcy Code: Sections 507(a)(1), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7) and 507(a)(8) of the Bankruptcy Code.

1.2.57 *"Priority Creditor"* means any Creditor holding a Priority Claim or Priority Tax Claim.

1.2.58 *"Priority Tax Claim"* means a Claim under or entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.2.59 *"Professional"* means any professional employed in the Chapter 11 Case pursuant to Sections 327 or 1103 of the Bankruptcy Code seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.2.60 *"Professional Fees"* means the fees and reimbursement for disbursements and expenses owed to Professionals.

1.2.61 *"Proof of Claim or Interest"* means a Claim or Interest properly filed by a Holder of a Claim or Interest before the Bar Date.

1.2.62 *"Pro-Rata"* means at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class unless the Plan expressly provides otherwise.

1.2.63 *"Real Property"* means those parcels of real property commonly known as 188 Earl Davis Drive, Russellville, Kentucky.

1.2.64 *"Real Property Sale Motion"* means that certain motion to sell the Real Property filed on August 24, 2016 (Docket No. 268).

1.2.65 *"Schedules"* means the schedules of assets and liabilities, the list of Holders of Interests and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 as such schedules and statements have been, or may be supplemented or amended through the Confirmation Date.

1.2.66 *"Secured Claim"* means a Claim secured by a Lien on property in which the Estate has an interest, but only to the extent of the value of the Creditor's interest in the Estate's interest in the property as of the Petition Date and only if such Secured Claim is Allowed.

1.2.67 *"Settlement Agreement"* means that certain Settlement Agreement dated September 29, 2016 by and between Debtors, the Committee, Norwest, Bank and Andrew D. Masullo, which is attached hereto as **Exhibit B** (see also Exhibit B to Docket No. 366.), as amended by Amendment to Settlement Agreement to correct scrivener's error attached hereto as

Exhibit B-1, which Settlement Agreement as amended was approved by order of this Court at Docket #431.

1.2.68 *"Unsecured Claim"* means a Claim that is neither a Secured Claim, an Administrative Claim, a Priority Claim, nor a Priority Tax Claim.

1.2.69 *"Unsecured Creditor"* means any Creditor that holds an Unsecured Claim.

1.3 RULES OF INTERPRETATION. For purposes of the Plan:

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, shall be incorporated by reference into this Plan for all purposes.

1.3.3 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4 Captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.5 The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4 COMPUTATION OF TIME. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern.

1.5 GOVERNING LAW. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.6 EXHIBITS. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. **All Exhibits may be revised prior to the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

9

1.7    ESTIMATES OF CLAIMS. Unless expressly stated otherwise, nothing herein shall be deemed to be an admission by the Debtor, the Creditor Trustee or the Committee or to otherwise prejudice the Debtor, the Creditor Trustee or the Committee in any claims objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan and Exhibits are current estimates only. All Claims amounts and classifications remain subject to the claims objection process as set forth in Article XI.

## ARTICLE II

## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION

Administrative Creditors and Priority Tax Creditors shall be paid as follows:

2.1    GROUP I - ADMINISTRATIVE CLAIMS. The Claims of Group I shall consist of all Allowed Administrative Claims, including: any taxes that qualify as Administrative Claims; quarterly fees for the United States Trustee; Professional Fees; amounts due Andrew Masullo which qualify as administrative expenses consistent with the Settlement Agreement and the Final DIP Order; and all other expenses that qualify as an Administrative Claim incurred during the pendency of the Case that have not been paid before the Effective Date in the ordinary course of the Debtor's business or otherwise paid pursuant to a Court order. The Debtor anticipates timely making all required payments on all United States Trustee fees and operating expenses during the pendency of the Case, and therefore does not anticipate that any such fees and expenses will be materially past due as of the Effective Date. The Debtor has estimated the final fees and expenses of Professionals that will be due upon allowance, not including any retainers and fees and expenses previously paid under procedures approved by the Court, as follows:

| | |
|---|---|
| [2]Miller Johnson: | $66,191.50 |
| Blue Water Partners, LLC: | $87,757.50 |
| Robert W. Zimmer & Associates, LLC: | $0.00 |
| Varnum LLP: | $71,163.00 |
| Conway MacKenzie, Inc.: | $37,613.00 |
| United States Trustee Fees: | $26,000.00 |

These amounts are estimates only and not intended to bind any Professionals or the Debtor. All Professional Fees are subject to Court approval.

2.1.1    Claims included in this Group shall retain their priority notwithstanding the confirmation of this Plan including, but not limited to, the occurrence of the Effective Date.

---

[2] Robert W. Zimmer & Associates, LLC currently holds in trust $20,000.00, Blue Water Partners, LLC currently holds in trust $30,497.50, and Miller Johnson currently holds in trust $51,886.50, which amounts shall be automatically applied and paid towards their Claims upon allowance of their respective Claims. The amounts set forth above do not include these retainer amounts.

2.1.2   Each claimant in this Group shall be paid the full amount of its Allowed Claim or in such amount and on such date as may be mutually agreed upon between Debtor and the particular claimant, and, if no date for payment is otherwise agreed upon, the latest of (a) the Effective Date, (b) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, (c) thirty (30) days after a motion or application for allowance of the Administrative Claim is filed, or (d) if necessary, or if the Claim is disputed, the date upon which the Bankruptcy Court enters its Final Order allowing such Administrative Claim.

2.1.3   Except as otherwise provided in this Plan, any Court order, or in any Bankruptcy Rule, the Bar Date for asserting any Administrative Claim against the Debtor shall be forty-five (45) days after the Effective Date.   Except as otherwise provided by order of the Bankruptcy Court, any Administrative Claim first asserted after this Bar Date will not be Allowed and shall not be entitled to payment as an Administrative Claim.

2.2   GROUP II - PRIORITY TAX CLAIMS.  Claims of Group II shall consist of the Allowed Claims against the Debtor that are entitled to priority under Section 507(a)(8) of the Bankruptcy Code.  These Claims include the following estimated Priority Tax Claims (as more fully set forth in the Debtor's Schedules and/or the Court's claims register):

> Internal Revenue Service, $100.00 (See Proof of Claim No. 32-1)
>
> Ohio Dept. of Taxation, $12,011.50 (see Proof of Claim No. 43-1)
>
> Ohio Dept. of Taxation, $12,649.68 (see Proof of Claim No. 44-1)
>
> Kentucky Dept. of Revenue, $125,837.93 (see Proof of Claim No. 75-1)

2.2.1   After payment in full of all Claims entitled to higher priority in accordance with Section 507 of the Bankruptcy Code, all Priority Tax Claims included in Group II shall be paid (a) on the Effective Date, unless the subject of an objection filed by the Debtor or Committee, or (b) promptly upon allowance of its Claim.

2.2.2   Notwithstanding anything to the contrary herein, nothing contained in this Plan shall prohibit or impair a Priority Tax Claimant's right to seek payment of such Priority Tax Claim from any third party obligated for such tax except to the extent paid pursuant to this Article 2.2 and otherwise under this Plan.

2.3   DETERMINATION OF PRIORITY CLAIMS.  The Debtor (prior to the Effective Date) or the Creditor Trustee (after the Effective Date) shall have the right to challenge any Priority Claim through the claims objection process set forth in Article XI of this Plan, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax.  The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtors' real or personal property that may or may not have been made by the respective taxing authority.

11

## ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF
## CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE
## PLAN AND THOSE IMPAIRED UNDER THE PLAN

All Holders of Claims against the Debtor and the Estate, other than the Claims treated in Article II, are divided into the Classes set forth in this Article III for all purposes, including confirmation of and distribution under the Plan. A Claim or a portion of a Claim will be placed into a Class only to the extent that the Claim qualifies within the description of such Class and may be in a different Class to the extent that the remainder of a Claim falls in such Class. A Claim will be entitled to the treatment accorded to a particular Class only to the extent that such Claim is an Allowed Claim.

The Plan divides Claims and Interests into four (4) Classes and treats them as follows:

3.1    CLASS I. Class I consists of the MB Claim.

      3.1.1    As of the Petition Date, the amount of the MB Claim was $11,388,812.59. The Class I Secured Claim is a first priority all-asset Allowed Secured Claim.

      3.1.2    The Class I Secured Claim is secured by an all-asset Lien on all of the Debtors' property, including the Real Property but excluding any vehicles, equipment or other personal property to which a Lien was not perfected under state law and excluding any Avoidance Actions which belong to the Debtor-In-Possession. None of the Class I Secured Claim is unsecured. Therefore, no part of the Class I Secured Claim shall be an unsecured deficiency claim entitled to treatment as a Class II Claim.

      3.1.3    Bank shall receive, in full satisfaction of its Class I Secured Claim, on or before the Effective Date or Closing Date, whichever is earlier, 100% of the net proceeds of Collateral securing its Class I Secured Claim, up to the unpaid amount of its Allowed Claim, consistent with the Settlement Agreement.

      3.1.4    Class I is not Impaired.

3.2    CLASS II. Class II consists of all Allowed Claims of Unsecured Creditors not otherwise satisfied by this Plan.

      3.2.1    Debtor estimates the gross amount of all Unsecured Claims to be $10,042,878.89.

      3.2.2    Each Holder of an Allowed Unsecured Claim shall receive a Pro Rata share of the Creditor Trust after payment of prior Claims.

      3.2.3    The corpus of the Creditor Trust shall be all Creditor Trust Assets that shall be transferred, assigned and set over to the Creditor Trust on or before the Effective Date.

      3.2.4    Class II is Impaired.

3.3     CLASS III.  Class III consists of the Allowed Claim of Norwest pursuant to the Settlement Agreement.

      3.3.1   Norwest is the holder of a $13,827,516.61 Claim against Debtor pursuant to an (i) 18% Subordinated Promissory Note dated October 26, 2011 and (ii) Amended and Restated 18% Subordinated Promissory Note dated August 30, 2013, as more fully set forth in Claim 52-1 filed by Norwest in the Case on August 30, 2016.

      3.3.2   Norwest shall receive in full satisfaction of its Allowed Claim such payments as provided in the Settlement Agreement.

      3.3.3   Class III is Impaired.

3.4     CLASS IV.  Class IV consists of Holders of Allowed Interests.

      3.4.1   The Holders of the Allowed Interests are: (a) 0.13% by William D. Best; (b) 0.72% by Guy M. Cassidy; (c) 0.17% by Larry D. Clanton; (d) 0.64% by Kevin Haines; (e) 1.82% by Joseph Haviv; (f) 5.69% by MidMark Capital II, L.P.; (g) 59.70% by Norwest; and (h) 31.13% by Protostar Equity Partners, LP.

      3.4.2   The Interests in the Debtors shall be cancelled as of the Effective Date.

      3.4.3   Class IV is Impaired.

## ARTICLE IV

## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1     SALE OF ASSETS.  If not already sold by the Effective Date, the Creditor Trustee shall sell the remaining Collateral, (other than Real Property), if any, in consultation with the Holder of Class I Claims, and the net proceeds of which (collectively, the "Proceeds"), shall be paid pursuant to Article II of the Plan and to the Holder of Class I Claim and in accordance with the Settlement Agreement, with the remainder being paid pursuant to the Settlement Agreement. Such sale(s) of Collateral, whether completed prior to or after the Effective Date, shall be deemed conducted pursuant to Section 363 and Section 1129 of the Bankruptcy Code, shall be explicitly approved thereunder in the Confirmation Order, and shall, upon consummation, be a transfer free and clear of all Liens, Claims, and Interests, and in accordance with and pursuant to Section 1146 of the Bankruptcy Code, exempt from any transfer taxes.

4.2     CREDITOR TRUST.  The Creditor Trust shall be established on the Effective Date for the benefit of all creditors of the Estate and shall be governed by the Creditor Trust Agreement. The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan, the Creditor Trust Agreement, and the Settlement Agreement from and after the Effective Date and shall have the powers set forth in the Creditor Trust Agreement, which powers, subject to the rights of the Oversight Committee, shall include the right to operate, sell or dispose the Creditor Trust Assets, the right to object to or continue objecting to Claims, and pursue Causes of Action.  Unless specifically stated otherwise herein, the Creditor Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this

Creditor Trust Agreement or specifically contemplated in this Plan and the Confirmation Order and except as otherwise set forth herein, the Creditor Trustee is not required to submit a proposed settlement to the Bankruptcy Court or such other court of competent jurisdiction on any matter for approval. If any provisions of this Plan are found to be inconsistent with the provisions of the Creditor Trust Agreement, the provisions of the Creditor Trust Agreement shall control.

4.3    VESTING OF ASSETS.  On the Effective Date of the Plan, the Creditor Trust Assets shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  For the removal of all doubt, anything that may have been deemed property of the Debtor or its Estate shall as of the Effective Date become and be forever deemed property of the Creditor Trust.  The entry of the Confirmation Order shall automatically be deemed to authorize and direct the Debtor to take such steps as may be necessary or appropriate to effectuate such transfer and contribution of its property to the Creditor Trust, subject to oversight from the Committee or the Creditor Trustee, as applicable.

Nothing in this Plan or the Creditor Trust shall preclude payment of: (a) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Effective Date or arising after the Effective Date; and (b) the Creditor Trust Expenses in accordance with the Plan and the Creditor Trust Agreement.

4.4    PRESERVATION OF RIGHTS.  The Creditor Trustee shall be assigned all rights of the Debtor to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtors' Chapter 11 Case) discovered in such investigation to the extent the Creditor Trustee deems appropriate, other than any Causes of Action that have been previously released or are being released in conjunction with this Plan.

All Causes of Action not expressly and specifically released in connection with the Plan, the Confirmation Order, or in any settlement agreement approved during the Chapter 11 Case, or as otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code shall remain assets of and vest with the Creditor Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Causes of Action have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and neither the Debtor nor the Creditor Trustee shall waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any Cause of Action that constitutes property of the Estates: (a) whether or not such Cause of Action has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such Cause of Action is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such Cause of Action filed a proof of Claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing preservation of rights, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a

Cause of Action in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditor Trustee's right to commence, prosecute, defend against, settle, and realize upon any Causes of Action that the Debtor or the Creditor Trustee has, or may have, as of the Effective Date. The Creditor Trustee may commence, prosecute, defend against, settle, and realize upon any Causes of Action in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Creditor Trustee.

The Debtor and the Creditor Trustee further reserve all rights to bring a motion under Section 506(c) of the Bankruptcy Code in order to ensure that Consummation of the Plan occurs.

4.5    CHANGE OF ADDRESS.   In order to ensure that it receives its distribution, each Creditor holding a Claim treated under Articles II or III must advise the Creditor Trust of any change in address. Absent any such notification, the Creditor Trust shall send payments to the address listed on the creditor matrix on file with the Bankruptcy Court.

4.6    DISSOLUTION OF THE COMMITTEE.

4.6.1    Subject to any contrary order of the Bankruptcy Court, the Committee shall continue in existence until the Effective Date, shall continue to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.

4.6.2    On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment of any Committee's attorneys, financial advisors, and other agents shall terminate except as provided herein.

4.6.3    Notwithstanding anything to the contrary in Section 4.6.2 above, on and after the Effective Date, the Committee shall continue with respect to: (a) any Claims for accrued Professional compensation of any Professionals and (b) any appeals of the Confirmation Order.

4.7    OVERSIGHT COMMITTEE.   The Oversight Committee will be deemed formed on the Effective Date. The Oversight Committee shall have the right to approve the sale or settlement of any Creditor Trust Assets in a transaction or settlement (an *"Approval Transaction"*) in which the value of such assets or settlement (individually or in the aggregate), or the resolution of any Claim to the extent the face or scheduled amount of such Claim exceeds, or reasonably could have been expected to exceed, $50,000.00.

The Creditor Trustee shall provide the Oversight Committee with reasonable written notice (not less than seven (7) days unless circumstances render such notice impracticable, in which case the Creditor Trustee will alert the members of the Oversight Committee in his correspondence of such shorter period for a response) of any Approval Transaction. The Creditor Trustee may provide notice by electronic mail to the members of the Oversight Committee and their representatives (if designated). In no event shall the Oversight Committee have less than two (2) Business Days' notice to approve a transaction

The Creditor Trustee will be authorized to proceed with an Approval Transaction, unless a majority of the members of the Oversight Committee provide written notice (including by electronic mail to the Creditor Trustee) of an objection to a particular transaction prior to the expiration of the notice period. If a majority of the members of the Oversight Committee provide written notice of their disapproval during the notice period, the Creditor Trustee may either: (a) alter or amend the terms of Approval Transaction until it is approved by a majority of the members of the Oversight Committee; or (b) choose not proceed with the Approval Transaction. No member of the Oversight Committee shall be entitled to compensation or expense reimbursement.

4.8     CORPORATE ACTION AND EFFECTUATING DOCUMENTS. Each of the matters provided for in this Plan involving the Debtor, including corporate action to be taken or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred, approved, authorized, and shall be effective as provided under this Plan without the requirement of any further action of any kind by the members, directors, officers, or board of the Debtor. Any officer of the Debtor shall be and hereby is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate on behalf of the Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to, or order, action or approval of, the Debtor's board or the Bankruptcy Court.

On the Effective Date, the authority, power and incumbency of the persons then acting as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned. The employment by the Debtor of each officer and all employees in the employment of the Debtor as of the Effective Date shall automatically on the Effective Date cease to be officers and employees of the Debtor. To the extent the Creditor Trust hires any prior employees of the Debtor, neither the Creditor Trustee nor the Creditor Trust shall be deemed a successor to the Debtor.

4.9     EFFECTIVE DATE TRANSACTIONS. The Effective Date shall occur, upon (a) the Debtor completing all transactions and executing all documents required to occur on the Effective Date hereunder and (b) the Debtor or the Committee, within three (3) Business Days of entry of the Confirmation Order, filing a Notice of Effective Date, which shall be provided to all Creditors via U.S. Mail and filed on the Court's CM/ECF docket.

4.10    SECURITY INTEREST IN CREDITOR TRUST ASSETS. The Creditor Trustee and his respective Professionals and Non-Professionals (as defined in the Creditor Trust Agreement) is hereby granted a first-priority lien on, and security interest in, the Creditor Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, to be retained by, or otherwise due hereunder or under the Creditor Trust Agreement to each of the above. The Creditor Trustee shall cause the Creditor Trust to take such actions and execute such documents as the Creditor Trustee and his respective Professionals and Non-Professionals deem appropriate to perfect the security interests granted hereunder. The Creditor Trustee is authorized to execute and deliver all documents on behalf of the Creditor Trust to accomplish the purposes of the Creditor Trust Agreement, the Plan, and the Confirmation Order.

16

## ARTICLE V

## EFFECT OF CONFIRMATION

5.1   <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE</u>. Except as otherwise set forth in the Confirmation Order or as expressly waived by the Debtor in writing, the following conditions must be met before the occurrence of the Effective Date:

    5.1.1   The Bankruptcy Court shall have entered a Confirmation Order confirming the Plan in the Debtor's Case without any material modifications of or material additions to the terms, conditions and Debtor's liabilities as set forth in this Plan, and no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

    5.1.2   There shall be no pending appeal of the Confirmation Order.

    5.1.3   There shall be no pending motion to dismiss or convert the Debtor's Case or to appoint a chapter 11 trustee or examiner.

    5.1.4   The Debtor has sufficient Cash, in the Debtor's reasonable discretion, to pay all Allowed Administrative Claims and Allowed Priority Claims required to be paid by this Plan as of the Effective Date.

    5.1.5   The Settlement Agreement has been approved by a non-appealable order.

5.2   <u>FAILURE OF A CONDITION PRECEDENT</u>.

    5.2.1   If the Conditions Precedent are neither met nor waived by the Debtor and Committee within one hundred and eighty (180) days after entry of the Confirmation Order, the Confirmation Order and this Plan shall be null and void, unless the Debtor or Committee files a motion before such date requesting that the Court extend the one hundred and eighty (180) day period.

    5.2.2   The Debtor and Committee may seek to withdraw this Plan at any time prior to the Effective Date by filing an appropriate motion with the Bankruptcy Court. If the Debtor withdraws this Plan, it shall be null and void for all purposes.

5.3   <u>RELINQUISHMENT OF CLAIMS</u>. Except as provided in either this Plan or the Settlement Agreement, the occurrence of the Effective Date shall also act as a merger and relinquishment of any and all Claims that Creditors have, or may have, against the Debtor and any successor claim against the purchaser of any of the Debtor's assets as provided in the treatment of the Creditors in Articles II and III. The forgoing notwithstanding, this paragraph shall not affect the rights of any taxing authority against any other Entity or Person who may be liable or responsible for the taxes of the Debtor.

5.4   <u>SUBORDINATED CLAIMS</u>. Pursuant to Section 510 of the Bankruptcy Code, the Creditor Trust reserves the right to re-classify (or request that the Bankruptcy Court re-classify)

any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

5.5    PROTECTIONS AGAINST DISCRIMINATORY TREATMENT.   Consistent with Section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including governmental units, shall not discriminate against the Debtor, the Creditor Trustee or the Creditor Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtor, the Creditor Trust or other Person with whom such Entity has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case, or has not paid a debt that is dischargeable in the Chapter 11 Case.

5.6    SETOFFS.   Except as otherwise expressly provided for in the Plan, Debtor or the Creditor Trust, as the case may be, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable to non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or Creditor Trust as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor in interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor in interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or the Creditor Trust of any Claims, rights, setoff rights and Causes of Action that the Debtor or Creditor Trust may possess against such Holder. The Debtor or Creditor Trustee shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Debtor or Creditor Trust assert setoff rights against such Holder until after entry of a Final Order resolving such setoff rights. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or the Creditor Trust unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 of the Bankruptcy Code or otherwise.

5.7    RECOUPMENT.   Except as otherwise permitted under this Plan, in no event shall any Holder of a Claim or Interest be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Creditor Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

5.8    RELEASE OF LIENS.   Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Articles II

18

and III of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Collateral and all other property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall be null and void.

5.9    INSURANCE PRESERVATION. Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other Entity.

## ARTICLE VI

## MODIFICATION OF THE PLAN

6.1    AMENDMENTS TO PLAN. The Debtor and the Committee may propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After confirmation, the Debtor, the Committee, or the Creditor Trustee may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan, the Creditor Trust or in the Confirmation Order or otherwise modify the Plan or the Creditor Trust.

6.2    REVOCATION OR WITHDRAWAL OF THE PLAN. The Debtor and the Committee reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plan(s). If the Debtor and Committee revoke or withdraw the Plan, or if confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) with the exception of the Settlement Agreement, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, Interests, or Causes of Action, (ii) prejudice in any manner the right of the Debtor, the Committee or any other Person, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Committee or any other Person; and (d) the Debtor's exclusive right to propose a Plan shall be deemed terminated.

## ARTICLE VII

## JURISDICTION OF THE COURT

7.1    JURISDICTION. This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:

A.    The classification of the Claim of any Creditor, including, without limitation, assessment of Claims under Section 506 of the Bankruptcy Code, and the re-examination of Claims that have been Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by the Debtor, Committee, or Creditor Trust to object to, or to examine, any Claim for the purposes of voting, shall not be deemed to be a

waiver of any right to object to, or reexamine, the Claim in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

B.     The determination of all questions and disputes regarding title to the assets of the Estate, and all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or any other party.

C.     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan, the Confirmation Order or the Creditor Trust Agreement as may be necessary to carry out the purposes and intent of this Plan.

D.     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided in Article VI of the Plan.

E.     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

F.     The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, to accomplish its obligations under the Plan.

G.     The review and approval of all Professional Fee applications for services rendered prior to the Effective Date and the review of any Professional Fees for services rendered in connection with the Plan after the Effective Date, to the extent that the Debtor and/or the Committee disputes all or a portion thereof.

H.     All matters relating to the Creditor Trust, including the Creditor Trust Assets and all objections to, estimation of or resolution of Claims by the Creditor Trust.

I.     The assumption or rejection of executory contracts under Article X of this Plan.

J.     The entry of an order determining the extent and/or validity of any Lien.

K.     The entry of an order concluding and terminating this Chapter 11 Case.

## ARTICLE VIII

### DISSOLUTION OF DEBTOR

8.1     DISSOLUTION OF DEBTOR. When the Creditor Trustee determines as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtor shall be dissolved without any further action by the stockholders, officers, or directors of the Debtor. The Creditor Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolution of the Debtor under Iowa state law, where the Debtor is

20

incorporated. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Creditor Trustee on behalf of the Debtor and shall take all steps necessary to allow and reflect the prompt dissolution of the Debtor as provided in the Plan, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Creditor Trustee may determine in his or her sole discretion. The Court may issue one or more Orders noting the Effective Date as evidence of the dissolution of the Debtor.

## ARTICLE IX

### UNITED STATES TRUSTEE FEES

9.1    U.S. TRUSTEE FEES. On or prior to the Effective Date, Debtor shall pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) that have accrued prior to the Effective Date. After the Effective Date, the Creditor Trustee shall pay to the United States Trustee from the Creditor Trust Assets the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) that accrue after the Effective Date and shall provide the relevant information as required by the Office of the United States Trustee until the Chapter 11 Case is administratively closed.

## ARTICLE X

### EXECUTORY CONTRACTS

10.1    REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute approval of such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.

10.2    REJECTION CLAIMS. Any Creditor who has a Claim as a result of the rejection of an executory contract or unexpired lease shall have thirty (30) days after the Effective Date to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety. An Allowed Claim for the rejection of an executory contract or unexpired lease shall be treated as a Class II Claim under the Plan.

10.3    OBJECTIONS TO REJECTION CLAIMS. The Creditor Trustee may file an objection to any Proof of Claim filed in accordance with Section 10.2 on or before the later of (a) sixty (60) days after the filing of the Proof of Claim or (b) the time set for the filing of objections in Section 11.1 (including any extensions). The objection will be resolved in accordance with Article XI.

# ARTICLE XI

## OBJECTIONS TO CLAIMS

11.1   TIMING OF OBJECTIONS.  Unless deemed Allowed in the Plan, the Final DIP Order or the Settlement Agreement, the Debtor or the Committee (prior to the Effective Date) and the Creditor Trust (after the Effective Date), as applicable, may object to the allowance and priority of any Claim, or the extent, validity and enforcement of any security interest, whether listed on the Schedules or filed by any Creditor on or before 180 days after the Effective Date.  Any Claim not the subject of an objection prior to such deadline shall be an Allowed Claim.

11.2   OBJECTIONS TO LIENS.  As part of the objection process set forth in Section 11.1 above, and without limiting same, the Debtor and/or Creditor Trust, as applicable, shall have the right to object to the any Lien asserted against property of the Debtor.

11.3   CLAIM DISPUTE RESOLUTION PROCEDURES.  The Debtor (prior to the Effective Date) or the Creditor Trust (after the Effective Date) shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature and/or amount thereof.  If the Debtor or the Creditor Trust, as applicable, agrees with the Holder of a Disputed Claim to compromise, settle and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the Debtor or the Creditor Trust, as applicable, may compromise, settle and/or resolve such Disputed Claim without Bankruptcy Court approval following the Effective Date but subject to the review of the Oversight Committee as set forth above.

11.4   CLAIMS BAR DATE.  Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Bar Date shall be deemed to be a Disallowed Claim and expunged as of the later of the Effective Date or the applicable Bar Date, without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been deemed timely filed by a Final Order.

11.5   ESTIMATION OF CLAIMS.  The Debtor or the Creditor Trustee may request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Creditor Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

11.6 __PAYMENTS AND DISTRIBUTIONS ON DISPUTED CLAIMS__. No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

## ARTICLE XII

## PROVISIONS GOVERNING DISTRIBUTIONS

12.1 __DISPUTED PAYMENTS__. Notwithstanding anything in this Plan to the contrary, the Debtor or the Creditor Trust, as applicable, shall not be obligated to make any payments towards the Disputed portion of any Disputed Claim. The Debtor or the Creditor Trust, as applicable, shall withhold any such payments, and, if the dispute is resolved in favor of the Claim Holder, the Debtor or the Creditor Trust, as applicable, shall make any missed distributions within fourteen (14) days after entry of a Final Order determining the Claim.

12.2 __DELIVERY OF DISTRIBUTIONS IN GENERAL__. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made by the Debtor or the Creditor Trustee, as the case may be, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Creditor Trust, as the case may be, after the date of any related Proof of Claim, (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor or the Creditor Trust, as the case may be, has not received a written notice of a change of address, or (d) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Neither the Debtor nor the Creditor Trust shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

12.3 __ALLOCATION OF PAYMENTS__. All distributions shall be allocated first to principle until the principle amount of the Claim is paid in full, next to interest if interest is Allowed in relation to the Claim and finally, to fees, costs and expenses if such are Allowed.

12.4 __COMPLIANCE WITH TAX REQUIREMENTS AND ALLOCATIONS__. In connection with the Plan, to the extent applicable, the Debtor and the Creditor Trust shall be authorized to take all actions necessary or appropriate to comply with all tax withholding and reporting requirements imposed on them by any governmental unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and the Creditor Trust each reserve the right, in its sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

12.5    REVERSION OF FUNDS.  Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Debtor or the Creditor Trust, as applicable, until (a) such distributions are claimed or (b) thirty (30) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Debtor or the Creditor Trust, as appropriate, free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.  Nothing contained herein shall require the Debtor or the Creditor Trust to attempt to locate any Holder of an Allowed Claim.

12.6    FRACTIONAL PAYMENTS; DE MINIMIS DISTRIBUTIONS.  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lowest whole number of dollars.  The Creditor Trustee will not make any payment of less than Fifty Dollars ($50.00) on account of any Allowed Claim, unless a specific request therefor is made in writing to the Creditor Trustee on or before ninety (90) days after the Effective Date.

12.7    TIME BAR TO CASH PAYMENTS.  Checks issued by the Creditor Trustee on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof.  Requests for reissuance of any check that has become null and void shall be made directly to the Creditor Trustee by the Holder of the Allowed Claim within thirty (30) days of the check becoming null and void.  After such thirty (30) day period has elapsed, all claims relating to such voided checks shall be discharged and forever barred.  In the case of checks issued on account of Allowed Claims but not negotiated within forty-five (45) days of issuance and for which no request for reissuance is made before thirty (30) days after issuance, the amounts at issue shall be considered to be a forfeited distribution.  Any creditor or claimant that fails to negotiate its check and seek reissuance shall be entitled to no further distributions on any Claim, regardless of Class.  If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Debtor or Creditor Trust, as appropriate, is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address.  Nothing contained herein shall require the Debtor or the Creditor Trust to attempt to locate any Holder of an Allowed Claim.

12.8    INTEREST.  Unless otherwise required by applicable bankruptcy law, or specifically provided for herein, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest or fees accruing on or after the Petition Date on any Claim.  In accordance with Section 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Unsecured Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in Section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Claim shall be entitled to or receive interest or fees relating to such Claim.

12.9    SETTLEMENT OF CLAIMS AND CONTROVERSIES.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies

24

relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and is fair, equitable and reasonable

## ARTICLE XIII

## EFFECT OF PLAN CONFIRMATION

13.1  <u>DISCHARGE OF CLAIMS</u>. The Debtor will not receive a discharge under the Plan in accordance with Section 1141 of the Bankruptcy Code.

Notwithstanding anything to the contrary in these Chapter 11 Cases, the Confirmation Order, the Plan, the Bankruptcy Code (and Section 1141 thereof), or any other document filed in these Chapter 11 Cases, any claim arising under Title I of ERISA against a party other than the bankruptcy estate, the Creditor Trust or the Creditor Trustee for breach of fiduciary duty or relating to a prohibited transaction with respect to the General Products Corporation Hourly-Rate Employees' Pension Plan shall not be discharged, released, or enjoined.

13.2  <u>INJUNCTION</u>. **Except as otherwise expressly provided in the Plan, all Entities that receive Distributions under the Plan and that have held, hold, or may hold Claims against or equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, Professionals, the Committee and its Professionals, the individual members of the Committee in their capacity as such, the Estate, the Creditor Trustee, or any of its property on account of any Claims or causes of action arising from events prior to the Effective Date: (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (d) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt or liability due to the Debtor.**

**Except as otherwise provided in the Plan or the Confirmation Order, on and after the Confirmation Date (subject to the occurrence of the Effective Date), all Persons and Entities who have held, hold or may hold Liens, Claims, or Interests in or against the Debtor or Interests in the Debtor are, with respect to any such Liens, Claims or Interests, permanently enjoined from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Creditor Trust or any of its property, the Creditor Trustee or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the foregoing Creditor Trust, Creditor Trustee, or any property of any such transferee or successor; (b) enforcing against, levying upon or attaching (including, without limitation, any pre-judgment attachment) the foregoing Creditor Trust, or any property of any such transferee or successor; (c) enforcing, levying, attaching (including, without limitation, any**

25

pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree, claim, or order against the Creditor Trust, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the foregoing Creditor Trust; (d) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Liens, Claims or Interests of any kind against or in the Creditor Trust, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the foregoing Creditor Trust; (e) asserting any right of setoff, subordination, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Creditor Trust, any of its property, the Creditor Trustee or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Creditor Trust or Creditor Trustee; and (f) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of this Plan.

By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.

13.3  TERMS OF EXISTING INJUNCTIONS OR STAYS.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case has been closed.  The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

13.4  EXCULPATION.  Subject to Section 1125(e) of the Bankruptcy Code, neither the Debtor, its Estate, the Committee, the Oversight Committee, the Creditor Trust, the Creditor Trustee and its Professionals and Non-Professionals, Norwest, the Bank, nor any of their respective present or former advisors, attorneys, or agents acting in such capacity, shall have or incur any liability to, or be subject to any right of action by, the Debtor or any Holder of a Claim or an equity Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, including the Creditor Trust Agreement (c) the solicitation of acceptances and rejections of the Plan, (d) the Chapter 11 Case, (e) the administration of the Plan, (f) the distribution of property under the Plan, and (g) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

From and after the Effective Date, the Creditor Trustee and his Professionals, Non-Professionals, and representatives shall furthermore be and hereby are exculpated by all Persons, including, without limitation, Beneficiaries, Holders of Claims and other parties in

interest, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of the Creditor Trust Agreement, the Plan, the Confirmation Order, any order of the Bankruptcy Court or applicable law, or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or fraud, and shall furthermore be entitled to all of the rights under the Creditor Trust Agreement including article 8 of the Creditor Trust Agreement, which is fully incorporated herein.

13.5    RELEASE OF LIENS.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document assumed, entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article III of the Plan, all mortgages, deeds of trust, liens, or other security interests against any property shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to the Creditor Trustee.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.1    FURTHER ASSURANCES.  The Debtor and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.  This shall include without limitation any execution by the Debtor of Uniform Commercial Code ("UCC") financing statements and the execution by Creditors of any UCC or mortgage discharges, releases or terminations.

14.2    SETOFFS AND COUNTERCLAIMS.  No Creditor (including without limitation a Person or Entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to setoff a Claim against an obligation to the Debtor arising in connection with a different contract.  Unless expressly asserted in the Chapter 11 Case through the filing of a motion with the Bankruptcy Court, all setoffs and counterclaims are waived pursuant to Article V of this Plan notwithstanding any assertion in any proof of claim.  The terms of this paragraph shall not apply to any taxing authority.

14.3    NOTICES.  Any notice to the Debtor or Creditor Trust required under this Plan shall be addressed to the Debtor and delivered by (a) U.S. certified mail, return receipt requested, (b) reputable overnight courier service with tracking, or (c) hand-delivery:

General Products Corporation
c/o Miller Johnson
John T. Piggins
45 Ottawa Ave, SW, Suite 1100
Grand Rapids, MI 49503

with a copy to:

The Official Committee of
Unsecured Creditors
c/o Varnum LLP
Brendan G. Best
160 W. Fort St., 5th Floor
Detroit, MI 48226

Failure to comply with this Section 14.3 shall render any notice to be invalid for purposes of this Plan.

14.4  SUCCESSORS AND ASSIGNS.  This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

14.5  BUSINESS DAY.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

14.6  SEVERABILITY.  The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor and such severance would constitute a permissible modification of the Plan pursuant to Section 1127 of the Bankruptcy Code.

14.7  FILING OF ADDITIONAL DOCUMENTS.  On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.8  CLOSING OF CASE.  The Chapter 11 Case shall remain open until such time as the Debtors or Creditor Trustee (or one of them, as applicable) has requested a Final Decree and complied with all relevant statutory provisions of required for entry of a Final Decree.

14.9  GOVERNING LAW.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Michigan, without giving effect to the principles of conflicts of laws.

14.10  SECTION HEADINGS.  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

14.11  FURTHER INFORMATION.  Requests for further information regarding the Debtor should be directed to the Debtor's counsel listed above.

## DISCLOSURE STATEMENT

## DESCRIPTION OF THE DEBTOR

A.    Debtor General Products Corporation ("*GPC*") is a Delaware corporation. Debtor General Products Mexico, LLC ("*G.P. Mexico*") is a Michigan limited liability company. The Debtors are liquidating their assets and will not continue their business.

B.    The Debtors' only remaining principal is Andrew Masullo, the Chief Executive Officer and President of GPC.

    1.    Mr. Masullo's background. Andrew Masullo was hired by GPC in August of 2012 as its President and Chief Executive Officer. Before joining GPC, Mr. Masullo served as the Vice President of Operations at Dover Corporation, and before that was the General Manager at Tyco Flow Control. Mr. Masullo has an outstanding record in leading and driving profitable organic and acquisitive growth through business planning and operational excellence processes and continuous improvement efforts, a consistent record of exceeding operational expectations in complex and changing environments utilizing Six Sigma, Lean Manufacturing, and global low cost country sourcing programs, and extensive international business experience inclusive of mergers, acquisitions, and divestitures, global customer sales and distribution support, and joint venture development. Upon joining GPC's team, Mr. Masullo served on the Board of Directors. Mr. Masullo is the only remaining member of GPC's Board of Directors.

    2.    Mr. Masullo's annual salary, compensation, draw or other remuneration, including fringe benefits.

| | Compensation Paid | | |
| --- | --- | --- | --- |
| | January to June 26th | | June 27th to September 30th |
| **Current Compensation Paid** | S | 137,500 | S 81,250 |
| | | | |
| **Current Benefits Paid** | | | |
|     Health Insurance | S | 2,935 | S 1,734 |
|     Life Insurance | S | 237 | S 140 |
|     401K Match | S | 5,500 | S 3,250 |
|     ER FICA | S | 5,874 | S 3,471 |
|     Other | | | |
| | | | |
| **Total Benefits** | S | 14,545 | S 8,595 |

29

3.    Mr. Masullo's relationship, if any, with the Debtors.   Mr. Masullo is a creditor of the Estate.  He is not an equity Interest holder of the Debtors.

a.    Mr. Masullo is an employee of GPC.

b.    There is no lessor-lessee relationship between Mr. Masullo and the Debtors.

C.    The Debtors' business, industry group and the causes for the Chapter 11 filing.

GPC is a Delaware company and is headquartered in Livonia, Michigan.  GPC (a) is the sole member of G.P. Mexico, which does not conduct any business operations and is also headquartered in Livonia, Michigan, and (b) as of the Petition Date, owned 98% of GP Innovative Machining & Assembly de Mexico, S. de R.L. de C.V. ("*Innovative*") and SLP Resource Solutions, S. de R.L. de C.V. ("*SLP*") (together, the "*Mexican Entities*").[3]  Set forth below is a flow chart summarizing Debtors' corporate structure as of the Petition Date.



General Products Corporation
Structure of Corporate Entities

---

[3] G.P. Mexico is also a Chapter 11 debtor, Case No. 16-49269.  G.P. Mexico owns 2% of the Mexican Entities.

As of the Petition Date, GPC was a full service supplier of highly engineered, complex and precision machine components and assemblies to the American automotive and heavy-duty truck markets. On the Petition Date, the company had approximately 175 employees located in its United States facilities.[4] In 2015, GPC had gross sales of approximately $43.4 million. Innovative generated revenues for GPC. These revenues are included in GPC's gross revenue figures.

The Debtors' headquarters and primary management offices are located at 14137 Farmington Road, Livonia, Michigan 48154. On the Petition Date, GPC also owned and operated manufacturing facilities at 1411 Wohlert Street, Angola, Indiana 46703 (the "*Angola Facility*") and 188 Earl Davis Drive, Russellville, Kentucky 42276 (the "*Russellville Facility*").[5] The Angola Facility, together with all related assets and all of Debtors' interest in the Mexican Entities, has been sold in the Chapter 11 Case (Court order approving this sale can be found at Docket No. 274). As of the date of this Disclosure Statement, the sale of the Russellville Facility is pending.

In 2009, Debtors started experiencing a decline in revenue due to a significant decline in auto and heavy truck sales. Debtors emerged from the 2008-2010 recession with a working capital deficit and a high debt to equity ratio. As Debtors began to recover, one of Debtors' largest customer programs was not renewed as a result of reengineering of materials used in the product. During 2011 and 2012, Debtors experienced a number of additional operational challenges related to tooling and commissioning new business. Despite continued capital investment, revenues failed to grow and the business never returned to profitability. In 2012 and 2013, Debtors implemented significant cost reductions and operational improvements under Mr. Masullo's leadership. In spite of these changes, due to a declining demand for product from existing customers and as a result of the increased capital requirements needed to replace and grow its business, Debtors faced insufficient cash flow to continue paying secured debt and vendor obligations on a timely bases. As a result, it was forced to seek a buyer or liquidate.

As a result of the factors described above, in late 2015, Debtors and their management team began evaluating a number of options to respond to their operational and liquidity issues. To this end, Debtors engaged an outside professional, Blue Water Partners, LLC, to evaluate their business and to propose potential strategies, including but not limited to, the raising of additional capital, a sale of some or all assets, or a restructuring transaction. However, in consultation with its advisors, Debtors ultimately concluded that a Chapter 11 bankruptcy and a sales process to effect a balance sheet restructuring would provide the business with the best chance for greater success and prosperity.

---

[4] Additionally, Innovative leased approximately 38 employees from SLP and two unrelated Mexican companies for its manufacturing facility. SLP functioned solely as the employer of 14 employees who were subcontracted to Innovative. Neither G.P. Mexico nor SLP had any manufacturing facilities.

[5] Innovative leased a manufacturing facility at Avenida EJE Dos #206 Lote 251 M1 Parque Industrial Logostik Villa Reyes, S.L.P., Mexico C.P. 79526.

31

## POST-PETITION EVENTS OF SIGNIFICANCE

A.     The Debtors have made three post-petition transfers outside the ordinary course of business:

1.     <u>Sale of Angola Facility and Debtors' operating assets</u>.  On June 28, 2016, GPC and G.P. Mexico filed a Motion to Approve (1) Bidding Procedures, a Termination Fee, Bid Protections, Form of Asset Purchase Agreement and Other Matters Relating to Sale of Substantially All of the Debtor's Operating Assets; (2) Sale of Substantially All of the Debtor's Operating Assets Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 105(a) and 363, and (3) The Assumption and Assignment of Certain Executory Contracts and Unexpired Nonresidential Real Property Leases Under 11 U.S.C. § 365 in Connection With the Sale Of Substantially All of Debtor's Assets (Docket No. 23, the "*Sale Motion*"), seeking authorization to sell substantially all operating assets, their ownership interest in the Mexican Entities and assign certain executory contracts and unexpired leases.  On July 21, 2016, the Court entered an Order (1) Approving Bidding Procedures, a Termination Fee, Bid Protections and Other Matters Relating to the Sale of Substantially All of the Debtor's Operating Assets: (2) Form of Asset Purchase Agreement; and (3) Scheduling a Sale Hearing (Docket No. 129, the "*Bidding Procedures Order*") approving, among other things, the bidding procedures with respect to, and notice of, the sale transaction.  No auction was held on August 22, 2016, consistent with the Bidding Procedures Order, because there were no other interested buyers beyond the stalking horse bidder, AAA-GPC Holdings LLC ("*Purchaser*").  Because the Purchaser submitted the only qualified bid for the assets and assumed liabilities, it was designated as the successful bidder under the Bidding Procedures Order.  A hearing before the Court was held on August 24, 2016 (the "*Sale Hearing*") to consider approval of the sale of the assets to Purchaser (as well as the assumption by Purchaser of the assigned contract and assumed liabilities.)  The Court considered arguments made by Debtors' counsel, creditors and other parties-in-interest at the Sale Hearing, and ultimately approved the Sale Motion.  The sale of the Angola Facility, Debtors' interest in the Mexican Entities and the Debtors' related operating assets closed on August 31, 2016.

2.     <u>Sale of Russellville Facility</u>.  On August 24, 2016, GPC filed the Real Property Sale Motion, requesting that the Court enter orders authorizing and approving bidding procedures, a break-up fee and form of asset purchase agreement relating to GPC's intended sale of its Russellville Facility free and clear of all liens, claims, and encumbrances to PTL Logistics, subject to higher and better bids.  On September 7, 2016, the Court entered an Order (1) Approving Bidding Procedures a Termination Fee, Bid Protections and other Matters Relating to the Sale of the Debtors' Real Property Located in Russellville, Kentucky; (2) Form of Asset Purchase Agreement; and (3) Scheduling a Sale Hearing (Docket No. 303, the "*Russellville Bidding Procedures Order*").  The Russellville Bidding Procedures Order scheduled an auction date of October 4, 2016, and the hearing on approval of sale for October 5, 2016.  Because there were no competing bids submitted pursuant to the Russellville Bidding Procedures Order, no auction occurred on October 4, 2016.  On October 5, 2016, the Court entered an Order: (I) Authorizing the Sale of the Debtors' Real Property Located in Russellville, Kentucky

Under § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims and Encumbrances to PTL Logistics, LLC; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement, as Amended, and Related Agreements with PTL Logistics and Authorizing Consummation of the Transactions Contemplated Therein; and (III) Granting Related Relief (Docket No. 364).

3. <u>Sale of idle assets at Russellville Facility</u>. On August 31, 2016, GPC filed a Motion to Approve Auction Sale of Idle Equipment at Russellville, Kentucky Facility Pursuant to an Asset Marketing Agreement with Hilco Industrial, LLC ("*Idle Assets Motion*"), requesting that the Court enter orders authorizing and approving bidding procedures relating to GPC's intended sale of its idle assets at the Russellville Facility free and clear of all liens, claims, and encumbrances via public online auction. A hearing on the Idle Assets Motion occurred on September 7, 2016, at which time no parties-in-interest objected. On September 7, 2016, the Court entered an Order Authorizing Public Auction Sale of Assets Located at Debtor's Russellville, Kentucky Facility (Docket No. 302, the "*Idle Asset Order*"). The Idle Asset Order authorized the sale of assets located at the Russellville Facility via online auction pursuant to the terms set forth in the Idle Asset Motion and the Asset Marketing Agreement between GPC and Hilco Industrial, LLC. As of the date of this Disclosure Statement, the auction sale has not yet occurred.

4. <u>Rejection of Union Contract</u>. On July 26, 2016, GPC filed a Motion to Reject Collective Bargaining Agreement Pursuant to 11 U.S.C. § 1113, requesting the Court allow GPC to reject the collective bargaining agreement dated November 11, 2013 between GPC and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 2277 (the "UAW") covering the employees at GPC's Angola, Indiana manufacturing facility. On August 24, 2016, the Court entered an Order Granting Debtor's Motion to Reject Collective Bargaining Agreement Pursuant to 11 U.S.C. § 1113. GPC complied with the terms and requirements of that Order, including payment to the UAW.

5. <u>Modification of Retiree Benefits</u>. On August 12, 2016, Debtor filed a Motion to Modify Retiree Benefits Pursuant to 11 U.S.C. § 1114, requesting authority to cease paying retiree benefits to previous employees of the closed Jackson facility. On August 24, 2016, the Court entered an Order Granting Debtor's Motion to Modify Retiree Benefits Purchase to 11 U.S.C. § 1114. GPC complied with the terms and requirements of that Order, including payment to the UAW.

B. The following are summaries of important details of cash collateral, post-petition financing and adequate protection orders:

1. <u>Cash collateral</u>. Bank was Debtors' pre-petition lender, holding a perfected security interest in all of Debtors' pre-petition assets. As of the Petition Date, Bank asserted a Secured Claim against Debtors in the excess of $13.5 million.

Pursuant to the Final Order Authorizing Debtor To: (A) Use Cash Collateral; (B) Incur Postpetition Debt and (C) Grant Adequate Protection And Provide Security And Other Relief To MB Financial Bank, N.A., entered July 23, 2016 (Docket No. 138,

the "*Final Order*"), Debtors were authorized to use cash collateral and borrow additional funds from Bank as necessary to continue their operations until the sale of their assets was completed. This Final Order also granted Bank continuing liens on Debtors' post-petition assets, together with other rights as adequate protection for its Secured Claim.

Upon the sale of the Angola Facility and Debtors' interest in the Mexican Entities, a portion of the Bank's debt was paid such that the total debt owed to the Bank was reduced to less than $5 million. On September 14, 2016, the Court entered the Amendment to Order Authorizing Debtors to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; and (C) Grant Adequate Protection and Other Relief to MB Financial Bank, N.A. (Docket No. 333, the "*Amended Final Order*"), which authorized Debtors to continue using cash collateral until the sale of the Russellville Facility and the idle assets in the Russellville Facility is completed. Debtors expect the MB Claim will be paid in full from the proceeds of these sales.

2.    <u>Post-petition financing</u>. Please see subsection B(1) above.

3.    <u>Adequate protection orders</u>. With the exception of the Final Order and Amended Final Order, there have been no adequate protections orders entered in this Chapter 11 Case.

C.    There has been no litigation during the case. However, the Committee has raised certain potential claims regarding the marshalling of the Aggregate Collateral of MB and the recharacterization or equitable subordination of Norwest's Claim and has objected to Debtor's Motion for Order Authorizing Assumption of Pre-Petition Employment Agreement (Docket No. 276) and the payment of the compensation provided under the August 14, 2013 Employment Agreement between Debtor and Mr. Masullo (collectively, the "Committee Objection and Claims"). After preliminary discovery and extensive arms' length negotiations, the Settlement Agreement was ultimately executed among the Debtors, the Committee, Norwest, the Bank, and Mr. Masullo and brought before the Court pursuant to a Rule 9019 Motion for approval (Docket No. 366). As of the date of this Disclosure Statement, the Rule 9019 Motion has not yet been approved by the Court.

## ASSETS AND LIABILITIES

A.    Please see liquidation analysis attached as **Exhibit C**.

B.    Please also see Exhibit C for any relevant risks, conditions, appraisals, and assumptions regarding the stated values, and the basis of the valuation.

C.    Other than the Committee Objection and Claims and the claims referenced below, no potential claims or causes of action, including claims against insiders and avoidance actions, have been investigated. Upon information and belief, the Creditor Trust will investigate any additional unwaived Causes of Action and pursue them if appropriate.

1.    Creditors within the 90-day period immediately preceding the commencement of this case set forth on the Exhibit to Statement of Financial Affairs re: Questions 2 and 4 (Docket No. 168) may be the subject of avoidance actions arising

under 11 U.S.C. § 547 (subject to any defenses available to such creditors). Upon information and belief, the Committee and/or Creditor Trust will make decisions as to which, if any, Avoidance Actions to bring at or after the Effective Date. The face value of these claims, according to the Debtors' Statement of Financial Affairs, is $7,549,053.84. The actual net value of these claims is currently unknown, but is expected to be less than the stated amount. While Committee continues to analyze these claims, and reserves all rights in that regard, and without limitation and not by way of any admission, based upon its initial analysis, it estimates that less than $3,000,000 may be potentially recoverable after application of certain possible defenses that might be raised by transferees. This estimate is not net of many other possible defenses, costs of litigation, or other professional fees.

       2.     Upon information and belief, the Creditor Trust will investigate payments made to insiders (as defined in Section 101(31) of the Bankruptcy Code) of the Debtors within the two (2) years prior to the Petition Date to determine whether any such payments can be recovered pursuant to an Avoidance Action. The net value of these claims is currently unknown.

       3.     The Committee is continuing to investigate whether any claims exist against any other officers or directors of the Debtor who are not released parties under the Settlement Agreement. If the Committee concludes that claims exist, the Committee may raise those claims and the Creditors Trust may continue to pursue those claims after the Effective Date.

      D.     For a list and description of the Priority Claims including anticipated Administrative Claims of all types, please see Sections 2.1 and 2.2 of the Plan.

      E.     For a total of all non-priority Unsecured Claims, including undersecured claims, please see Section 3.2 of the Plan.

      F.     For information regarding debts of the Debtors that are guaranteed by others, including the name of the guarantor or codebtor, the nature and amount of debt involved, the collateral securing the debt or the guaranty, if any, and the value of such collateral, please see **Exhibit D**.

## DETAILS REGARDING IMPLEMENTATION OF THE PLAN

      A.     Please see **Exhibit E** for meaningful summaries of financial information in a consistent format for the following periods:

       1.     Three years pre-petition; and

       2.     Post-petition to date. These documents are voluminous and therefore are not attached hereto, but are available upon request to Debtors' counsel or can be found at Docket Nos. 252 and 342.

Because the Debtors will not continue in business, projections for the period of payment proposed by the Plan together with assumptions underlying those projections are not included in Exhibit D.

B.    Because the business of the Debtors will not continue, there will be no employees, managers, officers or principals going forward, nor compensation or fringe benefits paid by the Debtors to anyone.

C.    Because the Debtors will not continue in business, there are no tax ramifications for a continuing Entity if the Plan is confirmed.

## LEGAL REQUIREMENTS

A.    <u>Voting procedures.</u>

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate Ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each Ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient Ballots may photocopy the Ballot received and file multiple Ballots.

Votes on the Plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities as <u>other</u> than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the Plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of such a claim or interest should vote on the enclosed Ballot either to accept or to reject the Plan, and then return the Ballot by mail to the Debtors' attorney by the deadline previously established by the Court.

Any Ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A Ballot that is not received by the deadline will not be counted.

If a Ballot is damaged, lost, or missing, a replacement Ballot may be obtained by sending a written request to the Debtors' attorney.

B.    Acceptance.

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast Ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast Ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.    Confirmation.

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1.    Each class of impaired creditors and interests must accept the plan, as described in subparagraph B entitled "Acceptance", above.

2.    Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D.    Modification.

The Debtor reserves the right to modify or withdraw the Plan at any time before confirmation.

E.    Effect of confirmation.

If the Plan is confirmed by the Court:

1.    Its terms are binding on the Debtors, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the Plan.

2.    Except as provided in the Plan and in 11 U.S.C. § 1141(d):

(a)    In the case of a corporation that is liquidating and not continuing its business:

(1)    Claims and interests will not be discharged.

(2)    Creditors and shareholders will not be prohibited from asserting their claims against or interests in the Debtors or their assets.

*[SIGNATURES ON FOLLOWING PAGE]*

37

Respectfully submitted.

General Products Corporation

By: _____
    Andrew D. Masullo
    Its: Chief Executive Officer and President


General Products Mexico LLC

By: _____
    Andrew D. Masullo, Chief Executive Officer and
    President of General Products Corporation
    Its: Member


MILLER JOHNSON
Attorneys for Debtors

By _____
    John T. Piggins (P34495)
    piggins@millerjohnson.com
    Robert D. Wolford (P62595)
    wolford@millerjohnson.com
    Rachel L. Hillegonds (P67684)
    hillegondsr@millerjohnson.com
    PO Box 306
    Grand Rapids, Michigan 49501-0306
    Telephone: (616) 831-1700
    Facsimile: (616) 831-1701


Official Creditors' Committee of General Products
Corporation and General Products Mexico, LLC


By: _____
    Jeffrey Turner, Chairman


38

Respectfully submitted,

General Products Corporation


By: _____
          Andrew D. Masullo
          Its: Chief Executive Officer and President


General Products Mexico LLC


By: _____
          Andrew D. Masullo, Chief Executive Officer and
          President of General Products Corporation
          Its: Member


MILLER JOHNSON
Attorneys for Debtors

By _____
          John T. Piggins (P34495)
          pigginsj@millerjohnson.com
          Robert D. Wolford (P62595)
          wolfordr@millerjohnson.com
          Rachel L. Hillegonds (P67684)
          hillegondsr@millerjohnson.com
          PO Box 306
          Grand Rapids, Michigan 49501-0306
          Telephone: (616) 831-1700
          Facsimile: (616) 831-1701


Official Creditors' Committee of General Products
Corporation and General Products Mexico, LLC


By: _____
          Jeffrey Turner, Chairman

38